UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CHARLES RIVER SYSTEMS, INC. d/b/a CHARLES RIVER DEVELOPMENT,<br><br>Plaintiff,<br><br>v.<br><br>THE INFORMED MOMENTUM COMPANY LLC f/k/a EAM INVESTORS, LLC,<br><br>Defendant. | Case No.: 1:25-cv-12297 |

## COMPLAINT

Plaintiff Charles River Systems, Inc. d/b/a Charles River Development ("Charles River" or "Plaintiff"), by and through its undersigned counsel, hereby asserts its Complaint against Defendant the Informed Momentum Company LLC f/k/a EAM Investors, LLC ("EAM" or "Defendant"), and alleges as follows:

### INTRODUCTION

1. Plaintiff Charles River agreed to provide Defendant EAM with investment management software and related services pursuant to a written agreement. EAM used Charles River's investment management software and related services, but knowingly and willfully refused to pay Charles River's fees for the software and services. Charles River brings this action to recover the outstanding balance owed to it and for damages for EAM's bad faith commercial conduct pursuant to G.L. c. 93A, including attorney's fees and costs associated with bringing this action.

1

**PARTIES**

2.     Charles River is a corporation organized and existing under the laws of the Commonwealth of Massachusetts, with its principal place of business at 700 District Avenue, Burlington, Massachusetts 01803.

3.     EAM is a limited liability company organized under the laws of the State of California, with its principal place of business at 215 Highway 101, Suite 216, Solana Beach, California 92075. EAM has two members, Derek Gaertner and Travis Prentice, both of whom are domiciled in (and therefore citizens of) California.

**JURISDICTION AND VENUE**

4.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1), in that this is a civil action between a citizen of Massachusetts and a citizen of California, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

5.     The parties consented to venue in this Court pursuant to 28 U.S.C. § 1404(b) through the parties' agreement, which provides that all actions, proceedings, and suits brought with respect to the agreement shall be brought in the state or federal courts located in Middlesex County, Massachusetts.

**FACTUAL BACKGROUND**

    **a.  The Governing Agreements**

6.     On or about December 27, 2017, Charles River and EAM entered into a written agreement entitled "Charles River Investment Management System Agreement" (the "Agreement"), together with related Order Forms and Schedules, pursuant to which Charles River agreed to provide, and EAM agreed to pay for, access to and use of Charles River's investment management software and related services. The Agreement and Order Forms set forth the terms

and conditions for EAM's use of the Charles River Investment Management System ("System"), including licensing, support, data services, and payment obligations. A true and correct copy of the Agreement is attached as **Exhibit 1**.

7. Concurrently, the parties executed an Order Form for the Charles River Investment Management System (the "System Order Form"). A true and correct copy of the System Order Form is attached as **Exhibit 2**. Under Section 4.1 of the System Order Form, the initial term of EAM's license (the "Initial Term") "commences upon the Order Form Effective Date, and continues for a period of three (3) years from the date of the first live use of the System in production."

8. As confirmed by Charles River's acceptance letter dated February 7, 2019 (the "Acceptance Letter"), EAM's first live use in production occurred on August 27, 2018 (the "Go-Live Date"). A true and correct copy of the Acceptance Letter is attached as **Exhibit 3**.

9. EAM did not respond to the Acceptance Letter.

10. EAM continued to use the investment management software and related services after receiving the Acceptance Letter.

11. Accordingly, the Initial Term ran from the go-live date on August 27, 2018 through August 26, 2021.

12. Section 4.1 further provides that, absent timely written notice of non-renewal at least ninety (90) days before expiration of the then-current term, the Order Form renews automatically for successive three-year periods on the same payment schedule.

13. EAM did not provide any notice of non-renewal ninety (90) days before August 16, 2021. Accordingly, the Order Form automatically renewed for an additional three-year period from August 17, 2021 through August 16, 2024.

14. EAM continued to use the investment management software and related services after August 17, 2021.

15. The Master Agreement and System Order Form require EAM to pay Annual Fees semi-annually, on January 3 and July 3 of each year, in advance of service. The Annual Fee for the first contract year was $209,687, subject to contractual Consumer Price Index ("CPI-U") plus annual inflation adjustment.

16. EAM signed additional Order Forms for related services, including Charles River's Real-Time Market Data Service (collectively with the Master Agreement and System Order Form, the "Agreements"). Each Order Form is co-terminous with the System Order Form.

17. Section 4.1 of the Master Agreement expressly obligates EAM to pay default interest at prime + 3 % on any overdue amount and to reimburse Charles River for all attorneys' fees and collection costs incurred in collecting—or attempting to collect—any fees.

**b. EAM's Breaches and Charles River's Efforts to Resolve the Dispute.**

18. EAM had access to the Charles River services from August 17, 2021 through August 26, 2024.

19. EAM timely paid accrued fees for services rendered from August 17, 2021 until January 2, 2024, when it withheld the semi-annual installment then due. The unpaid principal balance currently exceeds $270,477.67, plus applicable contractual interest, escalating CPI adjustments, attorneys' fees, and collection costs (collectively, the "Outstanding Balance").

20. On August 28, 2023—more than five years after the Go-Live Date and two years into the Second Term—EAM e-mailed Charles River an invalid "termination" notice asserting, incorrectly, that its contractual obligations would end on December 26, 2023.

21. The same day, Charles River's Client Manager responded and advised EAM that, pursuant to the applicable contract, the Term does not expire until August 16, 2024, and that all fees remain payable through that date.

22. Between March and December 2024 Charles River's Accounts Receivable team sent EAM *at least ten* written reminders of the Outstanding Balance. EAM ignored each one.

23. On January 10, 2025 Charles River issued a formal *Demand for Payment of Overdue Amount* (the "January 2025 Demand"). The letter notified EAM that it was in material breach and that default interest was accruing. A copy of the January 2025 Demand is attached as **Exhibit 4**.

24. EAM again failed to pay. Charles River scheduled a Microsoft Teams meeting for February 11, 2025 with EAM's Chief Operating Officer, Derek Gaertner. During the meeting Charles River's representatives displayed on-screen the contractual language unambiguously confirming the August 16, 2024 end date. Mr. Gaertner responded, "We have no intention of paying."

25. On March 17, 2025 Charles River issued a *Final Demand for Payment* (the "March 2025 Demand"), attached hereto as **Exhibit 5**, once again demanding payment, this time within forty-eight (48) hours of receipt of the March Demand. EAM again failed to pay.

26. EAM's conduct is knowing, willful, and in bad faith. It has forced Charles River to incur substantial attorneys' fees and costs, all recoverable under both the Agreements and G.L. c. 93A.

## COUNT I – Breach of Contract

27. Charles River repeats and realleges the allegations set forth in paragraphs 1 through 26 as if fully set forth herein.

28. The Agreements are valid, enforceable contracts supported by adequate consideration.

29. Charles River has performed all of its obligations thereunder.

30. EAM materially breached the Agreements by, among other things:

    a. Failure to pay the semi-annual fees due July 3 and January 3;

    b. Failure to pay default interest; and

    c. Failure to reimburse Charles River's collection costs.

31. As a direct and proximate result of EAM's breaches, Charles River has suffered damages in an amount to be proven at trial but not less than the Outstanding Balance, together with contractual interest, costs, and fees.

## COUNT II – Breach of the Implied Covenant of Good Faith and Fair Dealing

32. Charles River repeats and realleges the allegations set forth in paragraphs 1 through 31 as if fully set forth herein.

33. Every Massachusetts contract contains an implied covenant of good faith and fair dealing requiring that neither party do anything that will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract.

34. EAM violated this covenant by, among other things: (a) misrepresenting its contractual obligations; (b) retaining the benefits of the Charles River platform while refusing to pay; and (c) intentionally stonewalling Charles River's good-faith efforts to resolve the payment dispute.

35. EAM's conduct was willful, in bad faith, and caused Charles River the damages described above.

## COUNT III – Unjust Enrichment

36. Charles River repeats and realleges the allegations set forth in paragraphs 1 through 35 as if fully set forth herein.

37. EAM has received and retained the benefit of Charles River's System and related services without paying for them.

38. EAM has been unjustly enriched by receiving and using Charles River's software, hosting, support, and data services without payment.

39. It would be inequitable for EAM to retain those benefits without compensating Charles River in an amount equal to at least the Outstanding Balance.

## COUNT IV – Violation of G.L. c. 93A, § 11

40. Charles River repeats and realleges the allegations set forth in paragraphs 1 through 39 as if fully set forth herein.

41. EAM is engaged in trade or commerce within the meaning of G.L. c. 93A, § 11.

42. EAM knowingly and willfully refused to pay for services rendered in disregard of known contractual arrangements and otherwise acted in bad faith with respect to performance of its contractual obligations in violation of G.L. c. 93A, § 11.

43. EAM's conduct occurred primarily and substantially within Massachusetts, where Charles River is headquartered, where the contract is to be performed and enforced, and where the economic impact is felt.

44. Charles River has suffered loss of money or property as a result of EAM's unfair and deceptive acts.

45. EAM's conduct was willful and knowing, entitling Charles River to multiple damages, attorneys' fees, and costs under G.L. c. 93A, § 11.

WHEREFORE, Plaintiff Charles River Systems, Inc. d/b/a Charles River Development respectfully requests that this Court:

I. Enter judgment in favor of Charles River and against EAM on all Counts of Plaintiff's Complaint;

II. Award Charles River damages in an amount to be determined at trial, including but not limited to all unpaid fees, interest, attorneys' fees, and costs;

III. Award Charles River multiple damages, attorneys' fees, and costs pursuant to G.L. c. 93A, § 11; and

IV. Award such other and further relief as the Court deems just and proper.

## JURY DEMAND

Charles River demands a trial by jury on all issues so triable.

Respectfully submitted,
Charles River Systems, Inc. d/b/a Charles River Development,
By counsel,

Dated: August 15, 2025

*/s/ Morgan Nighan*
Morgan Nighan (BBO #679546)
Matthew W. Costello (BBO #696384)
Nixon Peabody LLP
Exchange Place
53 State Street
Boston, MA 02109-2835
Telephone: 617-345-1119
Facsimile: 877-710-2605
mnighan@nixonpeabody.com
mcostello@nixonpeabody.com